ELIZA O'NEIL, Appellee, *vs.* MARGARET CAPLES *et al.*
Appellants.

*Opinion filed February 20, 1913.*

1. CONTRACTS—*when provisions of a contract should be treated as though embodied in a deed.* Where the grantees in a deed enter into a written agreement concerning their obligation to the grantors, which constitutes a part of the consideration for the deed and embodies the agreement under which the deed was made, the provisions of the contract should be considered the same as though embodied in the deed, even though the contract was not signed by the grantors.

2. DEEDS—*courts prefer to interpret language in deed as covenant rather than a condition subsequent.* In the construction of deeds courts are inclined to interpret the language as a covenant rather than as a condition subsequent.

3. SAME—*what provision is a covenant.* A provision requiring the grantees in a deed to pay the interest on the mortgage indebtedness, taxes, insurance, outstanding indebtedness of the grantors and the funeral expenses or other debts and liabilities left by them or either of them, is in the nature of a covenant rather than a condition subsequent.

4. SAME—*when deed will not be set aside for breach of covenant.* A deed will not be set aside because of a breach of covenant by the grantees to pay taxes, insurance, interest on the mortgage debt and other specified expenses, but the grantor may, if compelled to make such payments, pursue the remedy at law against the grantees or resort to the land for reimbursement by a proper bill in equity.

5. SAME—*what is not ground for setting aside a deed.* Where the grantees in a deed agree, as part of the consideration, to pay the grocery bills and other living expenses of the grantors, the grantors are entitled to have such bills and expenses paid, but they cannot urge as ground for setting aside the deed that one of the grantees has failed to reimburse the other, as required by the contract, for the moneys expended for such purposes.

APPEAL from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, (TERRY & GUELTIG, of counsel,) for appellants.

SPRINGER & BUCKLEY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On October 6, 1910, appellee, Eliza O'Neil, filed her bill of complaint in the circuit court of Madison county against Margaret Caples, Patrick Caples and Mary O'Neil, seeking to set aside a deed to certain real estate in Madison county, or, in the alternative, that the defendants Margaret Caples and Mary O'Neil be required to specifically perform a certain agreement which is hereinafter set forth. Mary O'Neil defaulted and a decree *pro confesso* was entered against her. Margaret Caples and Patrick Caples answered the bill, and the complainant replied to the answer. The cause was referred to the master, who took the evidence and reported the same to the court, together with the following findings and conclusions:

That James O'Neil, the husband of the complainant, Eliza O'Neil, and the step-father of the defendants Margaret Caples and Mary O'Neil, was in his lifetime the owner in fee simple of the real estate described in the bill of complaint, being a farm of about 116 acres situated near the city of Edwardsville, in Madison county; that he was, at the time of the transactions hereinafter mentioned, living with his wife, Eliza O'Neil, and his step-daughter Mary O'Neil, on the land in controversy, and that Margaret Caples was living with her husband, Patrick Caples, on another farm in Madison county; that about November 1, 1909, James O'Neil agreed to convey the real estate described in the bill to Margaret Caples and Mary O'Neil, reserving to himself and to his wife, Eliza O'Neil, a life estate therein, upon condition that his step-daughters, Mary O'Neil and Margaret Caples, should conduct and till the premises and support him and his wife, Eliza O'Neil, during their respective lives, and that Mary O'Neil and Margaret Caples should also pay the current debts which he

257 — 34

owed, together with the interest then due upon a mortgage on said land and the interest thereon which should thereafter accrue; that the said agreements by Mary O'Neil and Margaret Caples were to be performed in accordance with the following written agreement which was thereafter prepared by an attorney and signed by Mary O'Neil and Margaret Caples:

"Whereas, James O'Neil and Eliza O'Neil have conveyed to Mary O'Neil and Margaret Caples certain real estate situated in section 1, in township 4, north, range 8, west of the third principal meridian, reserving only a life estate or interest therein; and whereas, said Mary and Margaret are to have immediate possession of said real estate under certain conditions and limitations, and they have mutually agreed upon the separate use and occupation of said premises between them:

"Now, therefore, it is hereby mutually agreed by and between the said Mary O'Neil and Margaret Caples that Mary O'Neil shall have the use and control of the orchard, house, garden and outbuildings and part use of the barn, and the free and undisturbed use of the pasture for whatever stock she may own or use, and the said Margaret Caples is to have the use and control of the remainder of said real estate. The expenses of the place, which are to include the interest on the debt, taxes, insurance and necessary repairs, are to be paid by Margaret Caples for the use of the land under her control, and if more is realized than is necessary for that purpose, such excess is to be expended either in the reduction of the debts or in such other improvements as they both (Mary and Margaret) may agree upon. Mary is to pay all grocery bills and other living expenses for the house,—that is, for herself and James O'Neil and Eliza O'Neil,—provided she realizes enough from the income from the property under her control, and if this income is not sufficient for such expenses then Margaret is to pay what may be necessary to make up such deficiency. If the coal underlying said real estate is sold, the proceeds therefor are to be used in paying off the indebtedness upon said place and any surplus is to be divided equally between them. If Margaret should desire to live upon the place, she may, at her own cost and expense, erect or build a dwelling house upon a site east of the L. & M. railroad track, or such other place as may be mutually agreed upon between them. In the event of death of either James O'Neil or Eliza O'Neil, or both, all funeral expenses or other debts and liabilities left by either of them shall be paid by Mary and Margaret, equally. The parties hereto shall have a settlement, annually, on September 1 of each year as to

the receipts and expenses of the preceding year up to that date, and all balances are to be adjusted at such settlement.

"It is further agreed by and between the said Mary O'Neil and Margaret Caples that this agreement is to continue and be in force for a period of ten years after the death of both James and Eliza O'Neil, unless revoked or annulled by consent of both the said Mary and Margaret.

"Signed and sealed this 23d day of November, A. D. 1909."

—that James O'Neil and his wife knew of the provisions incorporated in said agreement, and that the performance of the same was a part of the consideration for the conveyance of the real estate described in the bill by James O'Neil and wife to Mary O'Neil and Margaret Caples; that the deed conveying the premises in question, which was dated November 4, 1909, was prepared by an attorney with an office in the Bank of Edwardsville at the request of the defendant Mary O'Neil, and purported, in consideration of one dollar and love and affection, to convey the premises to Margaret Caples and Mary O'Neil, reserving a life estate to the grantors, but did not contain any of the undertakings and promises which were the consideration of the deed, as aforesaid; that after the deed had been prepared James O'Neil called at the bank and executed the same, and a day or two later his wife, Eliza O'Neil, executed the deed, leaving the same at the bank; that a few days thereafter the defendants called at the bank for the purpose of executing the written contract; that Patrick Caples objected to certain provisions of the instrument, as the same had been prepared by the same attorney who had drawn the deed; that the contract was modified to meet these objections and was then signed by Mary O'Neil and Margaret Caples, and that James O'Neil and Eliza O'Neil were afterwards advised of such modifications and acquiesced therein; that Margaret Caples and Mary O'Neil have disagreed as to what was required by the written contract to be done by each of them and have neglected and refused to perform the promises and undertak-

ings therein set forth; that Margaret Caples has paid the taxes for the year 1909, due and payable in the spring of 1910, but has not paid the taxes for the year 1910, due and payable in the year 1911; that she has also paid the interest on the mortgage due in 1910, amounting to $140, but has not paid the interest due in 1911; that she has also paid a portion of the funeral expenses of James O'Neil, such payments aggregating the sum of $46.75; that Mary O'Neil has paid a doctor's bill which was incurred during the lifetime of James O'Neil, amounting to $75; that the total amount of the outstanding indebtedness, exclusive of the taxes and interest on the mortgage, existing when the deed and agreement were executed, and including the funeral expenses of James O'Neil, is $336.25, of which Mary O'Neil has paid $75, being the doctor's bill above mentioned, and is liable, under said agreement, for the additional sum of $93.13 thereof, and that Margaret Caples has paid $46.75 of such indebtedness, being the funeral expenses paid by her, as aforesaid, and is liable under said agreement for the additional sum of $121.37 thereof; that the living expenses of James O'Neil and Eliza O'Neil up to September 1, 1910, were $132.95 in excess of the proceeds from that portion of the farm under Mary O'Neil's control up to that date, and that under the said agreement Margaret Caples should pay that sum to Mary O'Neil.

The conclusions of the master are that James O'Neil and Eliza O'Neil executed and delivered the deed in question, and that the same is valid and legal in all respects and conveyed the premises therein described to Mary O'Neil and Margaret Caples, subject to the mortgage thereon and subject to the life estate reserved to the grantors; that the defendants Margaret Caples and Mary O'Neil have not complied with the agreement made by them, as aforesaid, under date of November 23, 1909, and that Eliza O'Neil is entitled to have said agreement performed according to the tenor thereof, as a part of the consideration for said

conveyance; that the material facts alleged in the bill, except the allegation that the deed was never delivered, have been proven and are true, and that complainant is entitled to the relief of specific performance alternatively prayed in said bill but is not entitled to have said deed set aside.

The defendants Margaret Caples and Patrick Caples filed objections with the master to his report, which were overruled, and these objections were re-filed as exceptions in the circuit court. The complainant filed no objections with the master but filed exceptions to the report in court, excepting to the finding that said James O'Neil and Eliza O'Neil executed and delivered the deed in question, and that the same is valid and legal in all respects and conveyed the premises therein described to Mary O'Neil and Margaret Caples subject to the mortgage and life estate, and to the finding of the master as to the delivery of the deed; also urging in her exceptions that the master should have included in his report a recommendation that the deed be set aside for want of delivery. After a hearing upon the report of the master and the exceptions thereto, the court entered a decree finding the facts substantially as the master had found them, but finding, in addition thereto, that by reason of the failure of the defendants to perform the agreement of November 23, 1909, above set forth, in the respects shown by the master's report, and by reason of their failure to operate the farm, the consideration for said deed has wholly failed and the complainant is entitled to have said deed set aside. The court further found that James O'Neil departed this life testate, on or about March 26, 1910, leaving a last will, which has been duly probated, and in and by which he devised all his property and estate to his widow, Eliza O'Neil, as alleged in the supplemental bill filed herein. The decree sets aside the deed in question and declares the same to be null and void and of no force and effect, and orders the defendants to deliver up the said deed to the clerk of the court to be canceled.

Margaret Caples and Patrick M. Caples have appealed from that decree, and urge as grounds for reversal, first, that the contract between Mary O'Neil and Margaret Caples was an independent and distinct transaction from that by which the real estate in question was conveyed by James O'Neil and Eliza O'Neil to Mary O'Neil and Margaret Caples, and that the terms and provisions of the contract were not the consideration for the deed; second, that appellant Margaret Caples had, at the time of the filing of the bill of complaint herein, complied with the contract in so far as she was required at that time; and third, that the failure on the part of Mary O'Neil and Margaret Caples to comply with the contract, if there was any such failure, was not cause for setting aside the deed.

While some of the testimony relating to the question whether the contract was independent and distinct from the deed was incompetent, the competent testimony discloses conclusively that the contract does express the true consideration for the execution of the deed. It is true, some minor changes were made in the contract before it was executed by Mary O'Neil and Mrs. Caples, but it expressed the agreement which had been entered into between Mr. and Mrs. O'Neil and the two daughters. Such minor changes as were made in the contract before it was executed were acquiesced in and approved by the grantors in the deed. Appellee relies upon the provisions of the contract just as though the same had been embodied in and made a part of the deed itself, and she does so properly, as under the proof the two instruments should be considered as one, although the contract was not executed by the grantors in the deed.

In determining whether the chancellor erred in setting aside the deed because of the default of the grantees therein it is necessary to determine whether the provisions of the contract, when read into the deed, constitute covenants or conditions subsequent.

The agreement to pay the interest on the mortgage indebtedness, taxes, insurance, the outstanding indebtedness of the grantors, and all funeral expenses or other debts and liabilities left by either of them, is clearly in the nature of a covenant. In cases involving deeds with provisions similar to this we have refused the relief here sought. In *Gallaher* v. *Herbert*, 117 Ill. 160, a father conveyed a tract of land to his son in consideration of love and affection and the payment to him by the son of $200 a year as long as he should live, and the further consideration that the son should not sell or convey the premises during the life of the father. The son failed to make the annual payments and encumbered the land by a mortgage and by suffering judgments to be entered against him. The father filed a bill to have the conveyance set aside because of the son's failure to comply with the provisions of the deed, but we held he was not entitled to that relief and reversed the decree of the lower court, with directions to enter a decree against the land for the past-due installments and for a lien on the land for the future installments. In *Calkins* v. *Calkins*, 220 Ill. 111, the grantors sought to have a deed set aside because of the failure of the grantee to pay a cash consideration of $1000 and a mortgage of $1000, which by the terms of the deed he had assumed and agreed to pay. The circuit court granted the relief prayed for, but its decree was reversed by this court with directions to dismiss the bill. It was there held that the failure of the grantee to pay the cash consideration of $1000 was not ground for canceling the deed, and that the failure to pay the mortgage assumed could not affect the conveyance of the land, and that in case the grantors were compelled to pay the mortgage indebtedness they would have a remedy over against the grantee and could resort to the land for reimbursement. Under the holdings in those cases appellee could pursue her remedy at law against the grantees in the deed if she were compelled to pay the taxes, interest

on the mortgage or the outstanding debts or funeral expenses of her husband, or she could resort to the land for reimbursement by a proper bill in equity.

The master found that Mrs. Caples had paid the taxes and the interest on the mortgage due in 1910, and that she and Mary O'Neil had paid a part of the outstanding debts and funeral expenses of James O'Neil. It is not claimed that appellee has been called upon or compelled to pay any of the amounts which Mrs. Caples was obligated to pay by the terms of the contract. But whether this be true or not, a court of equity will not afford the relief sought under this provision of the contract. The further agreement to pay for necessary repairs to be made upon the farm and to pay the grocery bills and other living expenses of Mary O'Neil and the grantors is more in the nature of a covenant than of a condition, as it is really an agreement for the payment of money for specific purposes. It is not the ordinary agreement usually found in such instruments for the care and maintenance of the grantors. It necessarily implies that the grantors have the right to incur such living expenses and such expenses for repairs upon the farm as they themselves deem necessary, and that the grantees shall pay for the same. There is nothing in the language employed in the contract which indicates that it was intended that the conveyance should be made upon a condition subsequent. In the construction of deeds, courts will always incline to interpret the language as a covenant rather than as a condition. *Board of Education* v. *Baptist Church,* 63 Ill. 204; *Gallaher* v. *Herbert, supra.*

But even if the last mentioned portion of the contract be construed as a condition subsequent and not as a covenant of the deed, there is nothing disclosed by this record which entitles appellee to the relief granted. No claim is made by appellee that she has not been furnished the necessaries of life and all her living expenses. She offered in

evidence a statement of account by Mary O'Neil showing receipts from that portion of the farm controlled by her under the contract and also her expenditures for groceries and other living expenses. This statement disclosed that Mary O'Neil had paid all the living expenses, and that there was owing to her from her sister, Mrs. Caples, a balance of $132.95, being the excess of the expenses over the proceeds from the farm. The bill does not allege that the grantees are in default in failing to provide appellee with the comforts and necessaries of life, but alleges that Mrs. Caples has failed to contribute her proportion of the living expenses, and seeks to have the deed set aside on that and other grounds or to compel contribution from her. While, under the contract, appellee is entitled to have her living expenses paid, it is a matter of no concern to her whether they are paid by one or both of the grantees. Neither is she concerned in the adjustment of accounts between her daughters. Having had her living expenses paid by Mary O'Neil, appellee has no ground for complaint in that regard.

The liability of the grantees to pay the sums they are obligated to pay by the terms of the contract is not measured, as appellants contend, by the amount of the proceeds from the farm, except as to amounts required to be paid by Mary O'Neil for living expenses. By the terms of the contract Mrs. Caples has made herself personally liable to pay the sums therein specified to be paid by her, without regard to whether she receives sufficient proceeds from the farm with which to pay them.

Appellee is not entitled to the relief prayed for. The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the original and supplemental bills for want of equity.

*Reversed and remanded, with directions.*